OF

# NORTH CAROLINA

AT

# RALEIGH

## FALL SESSION 1971

STATE OF NORTH CAROLINA v. JULIUS STEWART SUMMRELL

No. 713SC744

(Filed 15 December 1971)

**1. Indictment and Warrant § 8— resisting arrest — assault on an officer — election by solicitor**

The trial court did not err in the denial of defendant's motions made before the introduction of any evidence to require the solicitor to elect whether he would prosecute defendant on the charge resisting arrest or on the charge of assault on an officer.

**2. Arrest and Bail § 6; Assault and Battery § 11— resisting arrest — assault on an officer — motion to quash — motion in arrest of judgment**

The trial court did not err in the denial of defendant's motions to quash the warrants and to arrest the judgments in this prosecution for resisting arrest and assault on an officer.

**3. Disorderly Conduct and Public Drunkenness § 1— disorderly conduct statute — constitutionality**

The statute defining the crime of disorderly conduct, G.S. 14-288.4, is not unconstitutionally vague and overbroad.

**4. Criminal Law §§ 42, 77— motion to see exculpatory statements**

The trial court did not err in the denial of defendant's motion "to see any and all exculpatory statements which the state had," where there is nothing in the record to indicate that the State had any "exculpatory statements" in its possession or that defendant made any request for such statements or exhibits in acocrdance with G.S. 15-155.4.

State v. Summrell

5. **Criminal Law § 71— testimony that defendant was talking "loud and boisterous"**

In this prosecution for disorderly conduct, resisting arrest and assault on an officer, the trial court did not err in allowing a police officer to testify that defendant was "talking very loud and boisterous" and "using very loud and boisterous language," since an observer may testify to common appearances, facts and conditions in language which is descriptive of facts observed so as to enable one not an eyewitness to form an accurate judgment in regard thereto.

6. **Criminal Law § 88— cross-examination of arresting officer — irrelevant testimony**

In a prosecution for disorderly conduct, resisting arrest and assault on an officer, the trial court did not err in sustaining the solicitor's objections to questions asked the arresting officer on cross-examination as to whether he had been involved in a scuffle at the jail with a prisoner, how many times he had been married, and whether he had visited the mental health clinic prior to the incident leading to the charges against defendant, the questions having called for irrelevant and immaterial testimony.

7. **Arrest and Bail § 6; Assault and Battery § 14— resisting arrest — assault on an officer — sufficiency of evidence**

The State's evidence was sufficient to be submitted to the jury on issues of defendant's guilt of resisting arrest and assault on an officer where it tended to show that when the officer arrested defendant at a hospital for disorderly conduct, defendant failed to submit peacefully to the lawful arrest after he had been advised and understood he was under arrest for disorderly conduct, and that defendant fought, struck and kicked the officer and forcibly left the hospital. G.S. 14-223; G.S. 14-33(b)(6).

8. **Disorderly Conduct and Public Drunkenness § 2— disorderly conduct — sufficiency of evidence**

The State's evidence was sufficient to be submitted to the jury on the issue of defendant's guilt of disorderly conduct where it tended to show that defendant created a public disturbance at a hospital by engaging in fighting and violent and threatening behavior and by using vulgar, profane and abusive language in such manner as to so arouse the average person as to create a breach of the peace.

9. **Indictment and Warrant § 12— amendment of warrant after defendant's evidence**

The trial court did not err in allowing the solicitor to amend a warrant charging disorderly conduct after the State and defendant had rested, where the amendment did not change the nature of the offense charged in the original warrant.

APPEAL by defendant from *Martin (Robert M.), Judge,* 10 May 1971 Session of Superior Court held in PITT County.

The defendant Julius Stewart Summrell was charged in valid warrants with disorderly conduct, resisting arrest, and assault on an officer, in violation of G.S. 14-288.4, 14-223, and 14-33(b)(6). The defendant was found guilty of each of the three charges in the District Court of Pitt County. He was sentenced on the charges of assault and resisting arrest to six months imprisonment and on the charge of disorderly conduct to thirty days to begin at the expiration of the first sentence. From the judgments of the District Court, the defendant appealed to the Superior Court.

Upon defendant's pleas of not guilty in the Superior Court, evidence was offered tending to show that at approximately 5:00 p.m. on 6 July 1970 the defendant Julius Stewart Summrell, a black male, twenty-two years of age, was brought into the emergency room of Pitt County Memorial Hospital, Greenville, North Carolina. The defendant refused to give the nurse in attendance any information other than his name. After being called by the nurse, Dr. Vick, a member of the hospital staff who was on surgical call, came in to see the defendant; Summrell refused to be seen by Dr. Vick. He wanted to see Dr. Best, a black doctor. The nurse testified that she called Dr. Best at his office and residence and learned that he was not in. She testified: "I went back and explained to Mr. Summrell that I had called Dr. Best's office; that I could not reach him at the moment but I would keep trying. He got real indignant. He was cussing and saying he was in a lot of pain and he couldn't get any attention. At that time Officer—At the time I said he said he couldn't get any attention, Dr. Vick had been there prior to that time. At that time Officer Phillips was in the room with me and he told me to get out of the room, which I did. Mr. Summrell told me to get out."

When Officer Barley F. Phillips, a patrolman with the Greenville Police Department, arrived at the hospital emergency room to further his investigation of the auto accident in which the defendant was injured, the officer first obtained permission from Dr. Vick, the physician in charge, to talk to the injured parties.

After the nurse explained to the defendant what was being done to reach Dr. Best, Patrolman Phillips began his investigation with Mr. Wooten, the operator of one of the vehicles involved in the accident who was in a cubicle lying on a treat-

ment bed about four to five feet from the defendant. Patrolman Phillips testified that the defendant "was talking very loud and boisterous—using profane language"; that the defendant said to Miss Shaw, "get out of my face white woman"; and that although he continued to try to talk to Mr. Wooten and get a statement from him, he could not. The officer testified:

> "I turned to Mr. Summrell and asked him to quiet down so I could finish my investigation and he, I advised him that if he didn't quiet down I would have to arrest him for disorderly conduct and carry him downtown after he was treated and he advised me I wasn't going to carry him any, I wasn't going to carry him any God damn where."

Another person in the waiting room testified that when Officer Phillips went into the defendant's room and began questioning him about the accident, the defendant said, " 'I am not going to tell you a damn thing and don't nobody else tell him nothing.' . . . [H]e was talking in an unusually loud voice at that time."

The witness testified: "He still had a boisterous voice and was making loud noises. . . . " When Dr. Vick went in the defendant's room Summrell said: "I want a black doctor; I don't want a white doctor; I want Dr. Best. I want a doctor, you white folks don't care a thing about us negroes."

The officer got permission to move Mr. Wooten from the cubicle to a room across the hall where he could continue his investigation. The defendant's mother told the defendant to be quiet and the defendant replied, "that's the damn trouble now. We've been quiet too long." The defendant then got up from his bed and went out in the hall, stating that he was going to get out of "this damn hospital and go home or go somewhere." The officer told the defendant he was under arrest and that he did not have permission to leave the hospital. The defendant then advanced on the officer who grabbed his arm and they began to tussle. In the ensuing fight the defendant struck the officer with his fists and took his blackjack. The officer drew his revolver, stepped back, and told the defendant to put the blackjack down or he would fire; whereupon, the defendant threw the blackjack which struck the officer and knocked him to the floor.

The defendant again started to leave the hospital and the officer told him he was under arrest and could not leave. Officer Phillips tried to keep the defendant in custody while the defendant made his way to the main parking area in front of the hospital where he got in the rear seat of a car. When Phillips attempted to close the car door, the defendant threw the car door open, and in trying to avoid the door, Phillips tripped and fell. The defendant then grabbed him and tried to get the officer's gun. During the fight, the defendant was yelling, "get his gun; we'll kill the son-of-a-bitch; get his gun." Phillips testified: " . . . I was knocked to the ground and I was kicked. I was kicked from the waist up and from the waist, I was kicked on my whole right side. I kept receiving blows to the head and to my neck and chest area and I could feel myself getting weak. I knew I was weak then. . . . My vision was blurred and I looked, and I saw Mr. Summrell with his fist clinched up and he started back towards me. . . .

\*      \*      \*

" . . . I was hurting from my, my whole body was aching. . . . " In the ensuing fight, the defendant was shot by the officer.

The defendant offered testimony wherein he admitted he was upset but that his words were due to the pain of the injuries suffered in the accident. He denied that he had been disorderly, that he had been placed under arrest, that he had resisted arrest, or that he committed any assault.

The jury found the defendant guilty of disorderly conduct, resisting arrest, and assault on an officer. From a judgment imposing a prison sentence of six months, the defendant appealed.

*Attorney General Robert Morgan by Associate Attorney James E. Magner for the State.*

*Chambers, Stein, Ferguson and Lanning by Charles L. Becton; and Paul and Keenan by Jerry Paul for defendant appellant.*

HEDRICK, Judge.

[1, 2]  In the cases charging resisting arrest and assault on an officer, the defendant assigns as error the court's denial of

State v. Summrell

his motions to require the solicitor to elect, to quash the warrants, and to arrest the judgments. The defendant's motion made before the introduction of any evidence to require the solicitor to elect whether he would prosecute the defendant on the charge of resisting arrest or assault on an officer was properly denied. *State v. Stephens*, 170 N.C. 745, 87 S.E. 131 (1915); *State v. Smith*, 201 N.C. 494, 160 S.E. 577 (1931); *State v. Hall*, 214 N.C. 639, 200 S.E. 2d 375 (1939). A motion to quash challenges the sufficiency of a bill of indictment or warrant. 4 Strong, N.C. Index 2d, Indictment and Warrant, § 14, pp. 359-60. " 'A motion in arrest of judgment is one made after verdict and to prevent entry of judgment, and is based upon the insufficiency of the indictment or some other fatal defect appearing on the face of the record.' *State v. McCollum*, 216 N.C. 737, 6 S.E. 2d 503." *State v. Kirby*, 276 N.C. 123, 171 S.E. 2d 416 (1970). The defendant was charged in separate warrants with resisting arrest, in violation of G.S. 14-223, and with assault on an officer, in violation of G.S. 14-33(b)(6). The warrants charge the separate offenses in the language of the statute, no defect appears on the face of the warrants, and the face of the record proper discloses no fatal defect. The court properly denied the defendant's motions.

[3]  Defendant's second contention is that the court erred in failing to quash the warrant charging disorderly conduct. He contends that G.S. 14-288.4(2) is "unconstitutionally vague and overbroad." The pertinent portions of G.S. 14-288.4 are as follows:

"Disorderly conduct is a public disturbance caused by any person who:

\*          \*          \*

(2) Makes any offensively coarse utterance, gesture, or display or uses abusive language, in such a manner as to alarm or disturb any person present or as to provoke a breach of the peace."

"It is settled law that a statute may be void for vagueness and uncertainty. . . . Even so, impossible standards of statutory clarity are not required by the constitution. When the language of a statute provides an adequate warning as to the conduct it condemns and prescribes boundaries sufficiently distinct for judges and juries to interpret and administer it uniformly, constitutional requirements

State v. Summrell

are fully met. *United States v. Petrillo,* 332 U.S. 1, 91 L. ed. 1877, 67 S.Ct. 1538." *In re Burrus,* 275 N.C. 517, 169 S.E. 2d 879 (1969) ; *State v. Sparrow,* 276 N.C. 499, 173 S.E. 2d 897 (1970).

The statute provides an adequate warning of the conduct condemned and is sufficiently distinct for judges and juries to apply uniformly, and the court did not commit error by denying defendant's motion to quash the warrant which charged the offense in the language of the statute. This assignment of error is overruled.

[4]  By his third assignment of error, the defendant contends that the court committed error by denying his motion "to see any and all exculpatory statements which the state had." "Pursuant to G.S. 15-155.4, the solicitor in a criminal trial is obligated to furnish certain specifically identified exhibits to the defendant to better enable him to prepare his defense. *State v. Macon,* 276 N.C. 466, 173 S.E. 2d 286 (1970)." *State v. McDonald,* 11 N.C. App. 497, 181 S.E. 2d 744 (1971), *cert. den.* 279 N.C. 396 (1971).

There is nothing in this record to indicate that the State had any "exculpatory statements" in its possession, nor is there anything in the record to show that the defendant made any request for such statements or exhibits in accordance with the statute. Moreover, the record discloses that the defendant was given full opportunity to examine all of the State's witnesses prior to the trial. This assignment of error has no merit.

[5]  The defendant's fourth assignment of error relates to the admission and exclusion of evidence. First, the defendant contends the court committed prejudicial error by allowing Officer Phillips to testify over defendant's objection that the defendant was "talking very loud and boisterous," and "using very loud and boisterous language." "An observer may testify to common appearances, facts and conditions in language which is descriptive of facts observed so as to enable one not an eyewitness to form an accurate judgment in regard thereto." *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469 (1968). The record discloses that the officer was merely describing the manner in which the defendant was conducting himself in the emergency room. This exception has no merit.

Next, the defendant contends the court committed prejudicial error by allowing over defendant's objections (1) the solici-

tor to ask a leading question, (2) a witness to give an answer which was not responsive to a question, (3) to go back over areas already covered, (4) to make a self-serving declaration, (5) to testify to facts not within her knowledge, and (6) to state conclusions. We have carefully examined each exception in the record upon which this contention is based and we find and hold that the court did not abuse its discretion in the conduct of the trial with respect to the admission and exclusion of the evidence challenged by these exceptions.

[6]  The defendant contends the court committed prejudicial error by sustaining the State's objections to questions on cross-examination of Officer Phillips regarding (1) whether the witness had been involved in a scuffle at the jail with a prisoner two or three weeks prior to the incident at the hospital, (2) how many times the witness had been married, and (3) whether the witness had sometime prior to this event visited the mental health clinic. Clearly, these questions call for irrelevant and immaterial testimony and the solicitor's objections were properly sustained. We have carefully considered each exception embraced in the defendant's fourth assignment of error, and we find no prejudicial error in the court's admission and exclusion of testimony.

The defendant urges as error the court's denial of his motion for judgment as of nonsuit made at the close of the State's evidence and renewed at the close of defendant's evidence. He grounds this assignment of error on the assertion in his brief: "The evidence shows that the defendant exerted his constitutional rights to resist an unlawful arrest." G.S. 15-41(1) provides: "A peace officer may without warrant arrest a person: (1) When the person to be arrested has committed a felony or misdemeanor in the presence of the officer, or when the officer has reasonable ground to believe that the person to be arrested has committed a felony or misdemeanor in his presence."

In *State v. Cooper*, 4 N.C. App. 210, 166 S.E. 2d 509 (1969), Chief Judge Mallard wrote:

> "When a person has been lawfully arrested by a lawful officer and understands that he is under arrest, it is his duty to submit peacefully to the arrest. *State v. Horner*, 139 N.C. 603, 52 S.E. 136. The words 'submit peacefully to arrest' imply the yielding to the authority of a lawful officer, after being lawfully arrested."

---

State v. Summrell

---

[7, 8]   When the evidence is considered in the light most favorable to the State, we hold it is sufficient to require the submission of these cases to the jury. There is evidence from which the jury could find that the defendant resisted, delayed, and obstructed Barley Phillips, a Police Officer of the City of Greenville, when the officer arrested him for disorderly conduct, by fighting, striking, and kicking the officer and by forcibly leaving the hospital, and by not submitting peaceably to a lawful arrest after he had been advised and understood that he was under arrest for disorderly conduct. There is also evidence from which the jury could find that the defendant assaulted the officer by striking and kicking him when the officer was undertaking to discharge the duties of his office. There is ample evidence from which the jury could find beyond a reasonable doubt that the defendant did create a public disturbance by engaging in fighting and violent and threatening behavior and by using vulgar, profane and abusive language in such a manner as to so arouse the average person as to create a breach of the peace. This assignment of error is overruled.

The defendant has brought forward several exceptions to the court's charge to the jury. A careful review of the charge in its entirety does not reveal any prejudicial error.

[9]   The defendant asserts that the trial court erred in allowing the State to amend the disorderly conduct warrant during the court's charge to the jury. The record reveals that before any evidence was taken in the three cases, the defendant moved to quash the disorderly conduct warrant on the grounds that the statute, G.S. 14-288.4, was unconstitutional. In denying the defendant's motion, the court announced that it would interpret Section (2) of the statute as follows: "Makes any offensive coarse utterance, gesture or displays or uses abusive language in such manner as to so arouse the average person as to create a breach of the peace." The court then instructed the solicitor that he could amend the warrant in view of the court's interpretation of the statute. The record reveals the amendment was written into the warrant by the solicitor in the absence of the jury after the State and the defendant had rested. The superior court has discretion to allow a warrant to be amended as to form and substance before or after verdict, provided the amendment does not change the nature of the offense intended to be charged in the original warrant. *State v. Williams,* 1 N.C. App.

312, 161 S.E. 2d 198 (1968); *State v. Brown*, 225 N.C. 22, 33 S.E. 2d 121 (1945). In the instant case the amendment did not change the nature of the offense charged in the original warrant, and the court did not abuse its discretion in allowing the solicitor to amend.

We have carefully considered the remaining assignments of error based on the defendant's exceptions to the court's denial of his motions for mistrial, to set aside the verdict and in arrest of judgment, and we find that they are all without merit.

The defendant had a fair trial in the superior court free from prejudicial error.

No error.

Chief Judge MALLARD and Judge GRAHAM concur.