ZACHARY, Judge.
 

 *467
 
 Where the felony of discharging a firearm into an occupied vehicle while it is in operation does not merge into felony murder, the trial court did not err in denying defendant's motion to dismiss the charge of first-degree murder based upon the felony murder rule. Where perfect self-defense was a defense to the underlying felony, the trial court erred in refusing to instruct the jury on lesser included offenses to felony murder. Where evidence showed that defendant withdrew, the trial court committed plain error in instructing the jury on the aggressor doctrine of self-defense.
 

 I. Factual and Procedural Background
 

 On the evening of 29 October 2012, Jorge Juarez (defendant) was drinking beer and smoking marijuana with Marcos Chaparro, Karen Gonzales, Erick Martinez, and Karina Rodriguez at Chaparro's residence in Durham. Around 11:30 p.m., the group traveled in Chaparro's four-door Acura to take Rodriguez to her home at the Foxhall Village development in Raleigh. At approximately
 
 *328
 
 12:00 a.m. on 30 October 2012, the vehicle arrived at Rodriguez' house in Foxhall Village. After dropping Rodriguez off, Chaparro and Martinez proceeded to break into vehicles nearby to steal car stereos. Martinez took Chaparro's baseball bat along for protection. Chaparro asked to carry defendant's gun, but defendant refused.
 

 Awakened by the noise, Foxhall Village resident Alfonso Canjay and his wife Silvia looked out of their window and saw Chaparro and Martinez "trying to steal something." Canjay chased Chaparro and Martinez, who fled back to the Acura; Canjay pursued them with a machete in his white Ford Focus. After eluding Canjay, Chaparro and Martinez returned to his residence and stole a stereo. Minutes later, Canjay, in his Ford Focus, spotted Chaparro and Martinez in the Acura and sped towards them, colliding twice with their vehicle. After the second impact, defendant fired one gunshot at Canjay's vehicle, shattering the driver's window.
 

 *468
 
 Immediately after the shooting, Gonzalez drove Chaparro, Martinez, and defendant back to Durham.
 

 Defendant was indicted for the first-degree murder of Canjay. On 6 June 2014, a jury found defendant guilty of first-degree murder pursuant to the felony murder rule, with the underlying felony being discharging a firearm into an occupied vehicle that is in operation. The trial court sentenced defendant to life imprisonment without parole.
 

 Defendant appeals.
 

 II. Motion to Dismiss
 

 In his first argument, defendant contends that the trial court erred in denying his motion to dismiss. We disagree.
 

 A. Standard of Review
 

 The standard of review is not disputed. "This Court reviews the trial court's denial of a motion to dismiss
 
 de novo.
 
 "
 
 State v. Smith,
 

 186 N.C.App. 57
 
 , 62,
 
 650 S.E.2d 29
 
 , 33 (2007). " 'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.' "
 
 State v. Fritsch,
 

 351 N.C. 373
 
 , 378,
 
 526 S.E.2d 451
 
 , 455 (quoting
 
 State v. Barnes,
 

 334 N.C. 67
 
 , 75,
 
 430 S.E.2d 914
 
 , 918 (1993) ),
 
 cert. denied,
 

 531 U.S. 890
 
 ,
 
 121 S.Ct. 213
 
 ,
 
 148 L.Ed.2d 150
 
 (2000). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor."
 
 State v. Rose,
 

 339 N.C. 172
 
 , 192,
 
 451 S.E.2d 211
 
 , 223 (1994),
 
 cert. denied,
 

 515 U.S. 1135
 
 ,
 
 115 S.Ct. 2565
 
 ,
 
 132 L.Ed.2d 818
 
 (1995).
 

 B. Analysis
 

 At the close of the State's evidence, defendant moved to dismiss the charge of first-degree murder. This motion was denied, renewed at the close of all the evidence, and denied again. Defendant contends that the trial court erred in denying this motion because the underlying felony of discharging a firearm into an occupied vehicle could not support a felony murder conviction.
 

 Felony murder is "[a] murder ... committed in the perpetration or attempted perpetration of any arson, rape, or a sex offense, robbery, kidnapping, burglary,
 
 or other felony committed or attempted with the use of a deadly weapon,
 
 " and constitutes first-degree murder, punishable
 
 *469
 
 by life imprisonment.
 
 State v. Wall,
 

 304 N.C. 609
 
 , 612,
 
 286 S.E.2d 68
 
 , 70 (1982) (emphasis in original) (citations omitted);
 
 see also
 
 N.C. Gen.Stat. § 14-17 (2013). The existence of some underlying felony is an essential element of felony murder.
 

 Defendant contends that, pursuant to the doctrine of merger, the underlying felony of discharging a firearm into an occupied vehicle merges into the charge of first-degree murder and thus cannot support the charge. This analysis, however, is inaccurate.
 

 The doctrine of merger provides that:
 

 [A] defendant may not be punished both for felony murder and for the underlying, 'predicate' felony, even in a single prosecution. The underlying felony supporting a
 
 *329
 
 conviction for felony murder merges into the murder conviction. The underlying felony provides no basis for an additional sentence, and any judgment imposed thereon must be arrested.
 

 State v. Barlowe,
 

 337 N.C. 371
 
 , 380,
 
 446 S.E.2d 352
 
 , 358 (1994) (citations and quotations omitted). The merger doctrine does not preclude indictments for both the murder and the underlying felony, nor a guilty verdict for both; rather, it requires that,
 
 if a defendant is found guilty of both felony murder and the underlying felony,
 
 the judgment on the underlying felony is arrested, and "merges" into the felony murder conviction. We have held that:
 

 The felony murder merger doctrine provides that "[w]hen a defendant is convicted of felony murder only, the underlying felony constitutes an element of first-degree murder and merges into the murder conviction."
 
 State v. Millsaps,
 

 356 N.C. 556
 
 , 560,
 
 572 S.E.2d 767
 
 , 770 (2002). "[W]hen the sole theory of first-degree murder is the felony murder rule, a defendant cannot be sentenced on the underlying felony in addition to the sentence for first-degree murder[.]"
 
 State v. Wilson,
 

 345 N.C. 119
 
 , 122,
 
 478 S.E.2d 507
 
 , 510 (1996) (quoting
 
 State v. Small,
 

 293 N.C. 646
 
 , 660,
 
 239 S.E.2d 429
 
 , 438-39 (1977) ); compare
 
 State v. Lewis,
 

 321 N.C. 42
 
 , 50,
 
 361 S.E.2d 728
 
 , 733 (1987) (stating that if a defendant's conviction of first-degree murder is based on both the felony murder rule and premeditation and deliberation, a defendant may be sentenced for both first-degree murder and the underlying felony).
 

 State v. Rush,
 

 196 N.C.App. 307
 
 , 313-14,
 
 674 S.E.2d 764
 
 , 770 (2009).
 

 *470
 
 In support of his position, defendant cites
 
 State v. Jones,
 

 353 N.C. 159
 
 ,
 
 538 S.E.2d 917
 
 (2000). In
 
 Jones,
 
 the defendant was charged with two counts of first-degree murder and several counts of assault after striking a vehicle from behind, causing a collision which injured multiple passengers and resulted in the death of two. The defendant was found guilty of first-degree murder under the felony murder rule and of multiple charges of assault against the surviving passengers. In dictum, the Supreme Court observed that the definition of felony murder includes a blanket category of " 'other felon [ies] committed or attempted with the use of a deadly weapon,' which includes such crimes as [assault with a deadly weapon inflicting serious injury] and shooting into an occupied dwelling or vehicle."
 
 Id.
 
 at 167,
 
 538 S.E.2d at 924
 
 . In a footnote, the Court in
 
 Jones
 
 further noted:
 

 Although this Court has expressly disavowed the so-called "merger doctrine" in felony murder cases involving a felonious assault on one victim that results in the death of another victim ... cases involving a single assault victim who dies of his injuries have never been similarly constrained. In such cases, the assault on the victim cannot be used as an underlying felony for purposes of the felony murder rule. Otherwise, virtually all felonious assaults on a single victim that result in his or her death would be first-degree murders via felony murder, thereby negating lesser homicide charges such as second-degree murder and manslaughter.
 

 Id.
 

 at 170 n. 3,
 
 538 S.E.2d at
 
 926 n. 3.
 

 The offense of discharging a firearm into an occupied vehicle while the vehicle is in operation differs, however, from ordinary assault. In the instant case, the underlying offense of discharging a firearm into an occupied vehicle is defined thus:
 

 (a) Any person who willfully or wantonly discharges or attempts to discharge any firearm or barreled weapon capable of discharging shot, bullets, pellets, or other missiles at a muzzle velocity of at least 600 feet per second into any building, structure, vehicle, aircraft, watercraft, or other conveyance, device, equipment, erection, or enclosure while it is occupied is guilty of a Class E felony.
 

 (b) A person who willfully or wantonly discharges a weapon described in subsection (a) of this section into an occupied dwelling or into any occupied vehicle, aircraft,
 
 *471
 
 watercraft, or other conveyance that is in operation is guilty of a Class D felony.
 

 (c) If a person violates this section and the violation results in serious bodily injury to any person, the person is guilty of a Class C felony.
 

 *330
 
 N.C. Gen.Stat. § 14-34.1 (2013). Of particular significance is the fact that a person may be found guilty of discharging a firearm into an occupied vehicle that is in operation even if defendant's conduct does not cause bodily injury to any person. Moreover, "[t]his Court ... has expressly upheld convictions for first-degree felony murder based on the underlying felony of discharging a firearm into occupied property."
 
 Wall,
 

 304 N.C. at 612-13
 
 ,
 
 286 S.E.2d at
 
 71 (citing
 
 State v. Swift,
 

 290 N.C. 383
 
 ,
 
 226 S.E.2d 652
 
 (1976) ;
 
 State v. Williams,
 

 284 N.C. 67
 
 ,
 
 199 S.E.2d 409
 
 (1973) ;
 
 State v. Capps,
 

 134 N.C. 622
 
 ,
 
 46 S.E. 730
 
 (1904) ).
 

 In
 
 Wall,
 
 the defendant, a store clerk, attempted to stop a shoplifter by firing a gun into her departing vehicle, resulting in the death of the driver. The defendant was charged with first-degree murder under the felony murder statute. On appeal, defendant urged our Supreme Court to apply the merger doctrine. The Court noted that the rule is attributed to the California case of
 
 People v. Ireland,
 

 70 Cal.2d 522
 
 ,
 
 450 P.2d 580
 
 ,
 
 75 Cal.Rptr. 188
 
 (1969). In
 
 Ireland,
 
 the California court held that "a ... felony-murder instruction may not properly be given when it is based upon a felony which is an integral part of the homicide and which the evidence produced by the prosecution shows to be an offense included
 
 in fact
 
 within the offense charged."
 
 Wall,
 

 304 N.C. at 612
 
 ,
 
 286 S.E.2d at 71
 
 (emphasis in original) (quoting
 
 Ireland,
 

 70 Cal.2d at 539
 
 ,
 
 450 P.2d at 590
 
 ,
 
 75 Cal.Rptr. at
 
 198 ). Our Supreme Court noted that "[t]he felony of discharging a firearm into occupied property, G.S. 14-34.1, appears to be such an integral part of the homicide in the instant case as to bar a felony-murder conviction under the California merger doctrine."
 

 Id.
 

 The Court went on to observe that "[t]his Court, however, has expressly upheld convictions for first-degree felony murder based on the underlying felony of discharging a firearm into occupied property."
 

 Id.
 

 Based upon North Carolina precedent, the Court held that discharging a firearm into occupied property, specifically into a vehicle while it was in operation, did not merge into felony murder in such a manner as to preclude the homicide charge. Relying on
 
 Wall,
 
 our courts have repeatedly declined to extend the merger doctrine into this area.
 
 See e.g.
 

 State v. Mash,
 

 305 N.C. 285
 
 , 288,
 
 287 S.E.2d 824
 
 , 826 (1982) ;
 
 State v. King,
 

 316 N.C. 78
 
 , 81-82,
 
 340 S.E.2d 71
 
 , 73-74 (1986) ;
 
 State v. Jackson,
 

 189 N.C.App. 747
 
 , 752,
 
 659 S.E.2d 73
 
 , 77 (2008) ;
 

 *472
 

 State v. Hicks,
 
 --- N.C.App. ----, ----,
 
 772 S.E.2d 486
 
 , 489 (2015). Our precedent clearly states that discharging a firearm into occupied property is a felony involving a deadly weapon, and as such supports a charge of first-degree murder based upon the felony murder theory.
 

 In the case at bar, the offense underlying felony murder was the willful or wanton discharge of a firearm into a vehicle, which is a felony irrespective of the outcome. Defendant's arguments that it should merge into felony murder, and that as a result the charge of felony murder should have been dismissed, are specious.
 

 This argument is without merit.
 

 III. Lesser Offenses
 

 In his second argument, defendant contends that the trial court erred in denying his request to instruct the jury on the lesser offenses of second-degree murder and voluntary manslaughter. We agree.
 

 A. Standard of Review
 

 "[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed
 
 de novo
 
 by this Court."
 
 State v. Osorio,
 

 196 N.C.App. 458
 
 , 466,
 
 675 S.E.2d 144
 
 , 149 (2009). "An instruction on a lesser-included offense must be given only if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and to acquit him of the greater."
 
 State v. Millsaps,
 

 356 N.C. 556
 
 , 561,
 
 572 S.E.2d 767
 
 , 771 (2002).
 

 B. Analysis
 

 At trial, defendant requested that the jury be instructed on the lesser included offenses of second-degree murder and voluntary manslaughter. The trial court denied this request, and the jury was instructed only on the charge of first-degree murder pursuant to the felony murder theory. Defendant contends that this constituted reversible error.
 

 *331
 
 Defendant first maintains that there was conflict concerning the underlying felony, which defendant argues merges into felony murder. We have discussed and dismissed this argument in section II B of this opinion, above.
 

 Defendant next asserts that there was conflict regarding whether defendant acted in self-defense. Self-defense is not a defense to first-degree murder under the felony murder rule; it may be a defense solely to the underlying felony, and then only if it is perfect self-defense.
 
 State v. Richardson,
 

 341 N.C. 658
 
 , 668-69,
 
 462 S.E.2d 492
 
 , 499 (1995). We
 
 *473
 
 further note that, in the instant case, the jury was instructed on perfect self-defense. Our Supreme Court in
 
 Millsaps
 
 established when instructions on lesser included offenses were to be given with respect to felony murder:
 

 (i) If the evidence of the underlying felony supporting felony murder is in conflict and the evidence would support a lesser-included offense of first-degree murder, the trial court must instruct on all lesser-included offenses supported by the evidence whether the State tries the case on both premeditation and deliberation and felony murder or only on felony murder.
 
 State v. Thomas,
 

 325 N.C. 583
 
 ,
 
 386 S.E.2d 555
 
 [ (1989) ].
 

 ...
 

 (iii) If the evidence as to the underlying felony supporting felony murder is not in conflict and all the evidence supports felony murder, the trial court is not required to instruct on the lesser offenses included within premeditated and deliberate murder if the case is submitted on felony murder only.
 
 See
 

 State v. Covington,
 

 290 N.C. 313
 
 ,
 
 226 S.E.2d 629
 
 [ (1976) ].
 

 Millsaps,
 

 356 N.C. at 565
 
 ,
 
 572 S.E.2d at 773-74
 
 .
 

 The evidence supporting the underlying felony is in conflict. As previously discussed, the underlying felony of discharging a firearm into an occupied vehicle while it is in operation requires simply that a defendant (1) willfully or wantonly discharges (2) a weapon (3) into an occupied vehicle (4) that is in operation. N.C. Gen.Stat. § 14-34.1(b). There is no question that this transpired. Defendant fired a gun into Canjay's vehicle while Canjay was driving it. The evidence also showed, however, that defendant and his associates were leaving from in front of Canjay's home when Canjay pursued them in his vehicle, ramming into their vehicle twice. This evidence is sufficient to support a finding that defendant had a reasonable fear for his safety and was within his rights to fire his gun in self-defense.
 

 A finding that defendant acted in reasonable self-defense would have rendered him not guilty of a charge of discharging a firearm into an occupied vehicle and would have necessarily precluded a finding of guilt for first-degree murder based upon felony murder. The evidence, however, would have been sufficient to support a lesser included offense. As such, we hold that defendant has adequately demonstrated that it was
 
 *474
 
 error to deny defendant's request that the jury be instructed on the lesser included offenses of second degree murder and voluntary manslaughter.
 

 IV. Self-Defense
 

 In his third argument, defendant contends that the trial court committed plain error by instructing the jury that defendant could not receive the benefit of self-defense if he was found to be the aggressor. We agree.
 

 A. Standard of Review
 

 The North Carolina Supreme Court "has elected to review unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence."
 
 State v. Gregory,
 

 342 N.C. 580
 
 , 584,
 
 467 S.E.2d 28
 
 , 31 (1996).
 

 [T]he plain error rule ... is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "
 
 fundamental
 
 error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the
 
 *332
 
 fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."
 

 State v. Lawrence,
 

 365 N.C. 506
 
 , 516-17,
 
 723 S.E.2d 326
 
 , 333 (2012) (quoting
 
 State v. Odom,
 

 307 N.C. 655
 
 , 660,
 
 300 S.E.2d 375
 
 , 378 (1983) ).
 

 B. Analysis
 

 At trial, the trial court instructed the jury that defendant was not entitled to the benefit of self-defense on the felony of discharging a firearm into an occupied vehicle if defendant was the aggressor in that situation. As defendant failed to object to this instruction at trial, we review it for plain error.
 

 Our courts have consistently held that it is reversible error to instruct the jury on the aggressor doctrine of self-defense where there is no evidence that the defendant was the initial aggressor.
 
 See e.g.
 

 State v. Washington,
 

 234 N.C. 531
 
 , 535,
 
 67 S.E.2d 498
 
 , 501 (1951) ;
 
 State
 

 *475
 

 v. Jenkins,
 

 202 N.C.App. 291
 
 , 299,
 
 688 S.E.2d 101
 
 , 106-07 (2010) ;
 
 State v. Tann,
 

 57 N.C.App. 527
 
 , 530-31,
 
 291 S.E.2d 824
 
 , 827 (1982). The initial aggressor doctrine provides that "the right of self-defense is only available to a person who is without fault, and if a person voluntarily, that is aggressively and willingly, enters into a fight, he cannot invoke the doctrine of self-defense unless he first abandons the fight, withdraws from it and gives notice to his adversary that he has done so."
 
 State v. Marsh,
 

 293 N.C. 353
 
 , 354,
 
 237 S.E.2d 745
 
 , 747 (1977). Although our courts have not explicitly defined an "initial aggressor," we have held that withdrawing from conflict is a means by which a person can avoid that status.
 

 In the instant case, the evidence at trial tended to show that: (1) defendant waited in the Acura while his associates broke into vehicles to steal car stereos; (2) Canjay discovered the break-ins, grabbed a machete, and chased defendant's associates back to the Acura; (3) after eluding Canjay, defendant and his associates returned to Canjay's residence and stole a stereo from a vehicle nearby; (4) Canjay spotted defendant's associates and pursued the Acura in his own car; (5) Canjay used his car to ram the Acura twice; and (6) defendant fired into Canjay's vehicle. Even if we were to assume that defendant's conduct rose to the level of aggression, his withdrawal in the Acura removes him from the realm of the initial aggressor. Canjay's pursuit of defendant and his associates reframes the conflict, placing Canjay in the role of aggressor when he used force against defendant and his companions. As there was no evidence to support a determination that defendant was the initial aggressor, the trial court erred in issuing an instruction on the initial aggressor exception to self-defense.
 

 NO ERROR IN PART, REVERSED AND REMANDED IN PART.
 

 Judges STEPHENS and McCULLOUGH concur.